UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 11-32924 (JAM) |
| | ) | | |
| MELVIN a/k/a MEL THOMPSON | ) | CHAPTER | 7 |
| | ) | | |
| DEBTOR. | ) | | |
| - - - - - - - - - - - - - - - - - - - - - - | ) | | |
| MEXICO CONSTRUCTION AND PAVING AND MARTIN MENDOZA | ) ) | ADV. PRO. NO. | 12-03065 |
| | ) | | |
| PLAINTIFFS | ) | ECF Nos. | 49, 73 |
| | ) | | |
| vs. | ) | | |
| | ) | | |
| MELVIN THOMPSON | ) | | |
| | ) | | |
| DEFENDANT. | ) | | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## APPEARANCES

Elio C. Morgan, Esq.                    Attorney for the Plaintiffs
The Law Office of Elio C. Morgan
4 Research Drive, Suite 402
Shelton, CT 06484

Gregory F. Arcaro, Esq.                 Attorney for the Defendant
Grafstein & Arcaro LLC
10 Melrose Drive
Farmington, CT 06032

## MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT

Julie A. Manning, United States Bankruptcy Judge

### I. Introduction

In this adversary proceeding, the plaintiffs, Mexico Construction and Paving and Martin

Mendoza (hereinafter, collectively the "plaintiffs"), seek to have declared nondischargeable a

debt owed to them by the debtor Melvin a/k/a "Mel" Thompson (hereinafter, the "defendant") pursuant to various subsections of 11 U.S.C. § 523(a). The plaintiffs have moved for summary judgment on all counts of their adversary complaint in reliance upon the allegedly preclusive effect of a prior jury verdict rendered in Connecticut Superior Court on April 13, 2010. The defendant has filed a cross-motion for summary judgment with respect to specific counts of the adversary complaint. For the reasons discussed below, the plaintiffs' motion is **GRANTED IN PART AND DENIED IN PART** and the defendant's cross-motion is **DENIED**.

## II. Jurisdiction

The United States District Court for the District of Connecticut has jurisdiction over the instant proceedings pursuant to 28 U.S.C. § 1334(b), and the Bankruptcy Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a) and (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I).

## III. Procedural History

On November 21, 2011, the defendant filed a voluntary petition under the provisions of Chapter 7 of the Bankruptcy Code.

On August 10, 2012, the plaintiffs initiated this adversary proceeding by filing a three-count complaint (the "Adversary Complaint").[1] The Adversary Complaint seeks a declaration that the plaintiffs' debt is nondischargeable, in whole or in part, under the provisions of 11 U.S.C. §§ 523(a)(2), (a)(4) and/or (a)(6).

On December 12, 2012, the defendant filed an answer denying the allegations in the Adversary Complaint and asserting affirmative defenses.

---

[1] All references to documents appearing on the docket of the instant Adversary Proceeding will appear as: ECF Adv. _____. All references to documents appearing on the docket of the main bankruptcy case will appear as: ECF _____.

On June 26, 2013, the plaintiffs filed a response to the defendant's affirmative defenses, denying all the allegations contained therein and arguing that several of the affirmative defenses do not apply to the claims in the Adversary Complaint.

On July 31, 2013, the plaintiffs filed a motion for summary judgment on all three counts set forth in the Adversary Complaint.

On September 30, 2013, the defendant filed an objection to the plaintiffs' summary judgment motion and also simultaneously filed a cross-motion for summary judgment on certain counts in the Adversary Complaint.

On January 14, 2014, oral argument on both the plaintiffs' motion for summary judgment and the defendant's cross-motion for summary judgment was held before the court. In light of certain issues raised at the hearing, the parties were invited to submit supplemental briefs to address the potential collateral estoppel effects of the verdict entered in the Connecticut Superior Court. On January 22, 2014, the defendant filed a supplemental brief addressing these issues and on February 7, 2014, the plaintiffs filed their supplemental brief.

## IV. Undisputed Facts

A review of the plaintiffs' motion for summary judgment and documents appended thereto, the defendant's cross-motion for summary judgment and documents appended thereto, the parties' Rule 56(a) Statements, the supplemental briefs, and the examination of the record in the bankruptcy case and adversary proceeding, establishes the following undisputed facts for the purposes of the pending motions for summary judgment:

In March of 2006, the plaintiffs and the defendant entered into an agreement (hereinafter the "Settlement Agreement") to settle a previously-initiated Connecticut Superior Court case captioned *Mel Thompson v. Mendoza, et al.*, AAN-CV-05-4005125-S.

On April 18, 2007, a second action was filed in the Connecticut Superior Court, this time by the plaintiffs against the defendant, captioned *Mexico Construction, et al., v. Mel Thompson*, which was assigned docket # UWY-CV-07-5011712-S (the "Superior Court Action"). The complaint in the Superior Court Action (the "Superior Court Complaint") alleged eleven separate counts concerning, among other things, the enforceability of the Settlement Agreement. The Superior Court Action was tried to a jury in April of 2010.

The jury returned a verdict (the "Superior Court Verdict") in favor of the plaintiffs on the following counts of the Superior Court Complaint: Count One - Breach of Contract; Count Two - Common Law Vexatious Litigation; Count Three - Statutory Vexatious Litigation; and Count Four - Fraudulent Misrepresentation.

In reaching the Superior Court Verdict, the jury completed jury interrogatories (the "Jury Interrogatories"), a judicial form on which the jury records the basis for its conclusions and verdict in a given case. The Jury Interrogatories and the Superior Court Verdict were both appended to the plaintiffs' motion for summary judgment and their authenticity, accuracy and admissibility is not disputed by the parties.

The jury in the Superior Court Action made the following damages awards to the plaintiffs: $23,160.00 on Count One (breach of contract); $15,000.00 on Count Two (common law vexatious litigation); $45,000.00 on Count Three (statutory vexatious litigation); and $1.00 on Count Four (fraudulent misrepresentation). The jury's award of $15,000.00 on Count Two was vacated by the Connecticut Superior Court in order to avoid a double award of damages.

On May 21, 2010, an order for payment of costs in the amount of $1,698.20 was entered in Superior Court Action. On June 2, 2010, judgment was entered on Superior Court Verdict in the total amount of $68,661.00 (the "Superior Court Judgment").

On October 20, 2010, the Connecticut Superior Court entered an order directing the defendant to make weekly payments on the Superior Court Judgment. Following the entry of the Superior Court Judgment and the order to make weekly payments, the defendant refused to comply with a further order of the Connecticut Superior Court that he be examined as a judgment debtor.

As noted above, the defendant filed a Chapter 7 case with this court on November 11, 2011. The plaintiffs commenced this Adversary Proceeding on August 10, 2012.

## V. Discussion

### A. Summary Judgment Standard

"Federal Rule of Civil Procedure 56(a), made applicable to these proceedings by the Fed. R. Bankr. P. 7056, directs that '[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Parris v. Delaney (In re Delaney)*, 504 B.R. 738, 746 (Bankr. D. Conn. 2014) (internal quotations and alteration in original), quoting Fed. R. Civ. P. 56(a). When considering a motion for summary judgment "the judge's function . . . is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.*, quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Furthermore, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Flaherty v. Lang*, 199 F.3d 607, 615 (2d Cir. 1999), quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994).

At the summary judgment stage, the moving party bears the burden of showing that there are no material facts in dispute and the court is to draw all reasonable inferences, and resolve all ambiguities, in favor of the non-moving party. *United Transp. Union v. Nat'l R.R. Passenger*

*Corp.*, 588 F.3d 805, 809 (2d Cir. 2009).  Once the moving party has met its burden, in order to defeat the motion, the "party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'"  *In re Affinity Health Care, Mgmt., Inc.*, 499 B.R. 246, 251 (Bankr. D. Conn. 2013), quoting *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  "[A] non-moving party must point to more than a mere 'scintilla' of evidence in order to defeat a motion for summary judgment."  *Id.*, quoting *Havey v. Homebound Mortg., Inc.*, 547 F.3d 158, 163 (2d Cir. 2008).

### B.  General Collateral Estoppel Standards

In their respective motions for summary judgment, both parties argue that the Superior Court Verdict should be given preclusive effect in this adversary proceeding.  "It is well settled that preclusion principles apply in bankruptcy proceedings."  *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006); *In re Delaney*, 504 B.R. 738 (Bankr. D. Conn. 2014), citing, *Grogan v. Garner*, 498 U.S. 279, 284, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).  In cases "[w]here the debt in question is a judgment entered after a claim of fraud has been adjudicated, either party to a subsequent adversary proceeding on nondischargeability can invoke collateral estoppel to establish that the debt is or is not dischargeable under the relevant nondischargeability provision."  *Giaimo v. DeTrano (In re DeTrano)*, 326 F.3d 319, 322 (2d Cir. 2003); *accord, Control Module, Inc. v. Dybowksi (In re John C. Dybowski)*, No. 07-21152, 2012 WL 1945503 at *8 (Bankr. D. Conn. May 30, 2012).  "When determining the preclusive effect of a state court judgment, a court must apply the preclusive law of the rendering state."  *Faraday v. Blanchette*, 596 F. Supp. 2d 508 (D. Conn. 2009), citing *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).  As the Connecticut Supreme Court stated in *Cumberland Farms, Inc. v. Town of Groton*, 262 Conn. 45, 58, 808 A.2d 1107 (2002), under Connecticut law "[i]ssue preclusion arises when

an issue is actually litigated and determined by a valid and final judgment, and that determination

is essential to the judgment." The court in *Cumberland Farms* went on to further explain that in

Connecticut,

> . . . collateral estoppel precludes a party from relitigating issues and facts actually
> and necessarily determined in an earlier proceeding between the same parties or
> those in privity with them upon a different claim . . . . An issue is actually
> litigated if it is properly raised in the pleadings or otherwise, submitted for
> determination, and in fact determined . . . . An issue is necessarily determined if,
> in the absence of a determination of the issue, the judgment could not have been
> validly rendered . . . . If an issue has been determined, but the judgment is not
> dependent upon the determination of that issue, the parties may relitigate the issue
> in a subsequent action.

*Id.* at 58, n. 17; 2012 WL 1945503 (Bankr. D. Conn. May 30, 2012) at *9.  Additionally, in

Connecticut "[f]or collateral estoppel to apply, the issue concerning which relitigation is sought

to be estopped must be identical to the issue decided in the prior proceeding." *State v. Joyner*,

255 Conn. 477, 490, 774 A.2d 927 (2001) (internal quotation marks omitted).  Lastly, under

Connecticut law, it is clearly established that "[t]he proper function of [jury] interrogatories is to

provide a means by which the jury may record the findings of fact that form the basis of their

verdict." *Pagani v. BT II, Ltd. P'ship*, 24 Conn. App. 739, 752, 592 A.2d 397 (1991), *cert.*

*dismissed*, 220 Conn. 902, 593 A.2d 968 (1991).

### C. The Preclusive Effect of the Superior Court Verdict on the Plaintiffs' Motion for Summary Judgment

As noted above, the Superior Court Verdict resulted in a judgment in favor of the

plaintiffs on their breach of contract claim, their common law vexatious litigation claim, their

statutory vexatious litigation claim, and their fraudulent misrepresentation ("fraud") claim.  The

plaintiffs assert that under collateral estoppel principles, summary judgment should enter in their

favor on all counts of the Adversary Complaint as follows:

Count One—Section 523(a)(2) cause of action—summary judgment should enter due to the breach of contract and fraud verdicts.

Count Two—Section 523(a)(4) cause of action—summary judgment should enter due to the breach of contract verdict.

Count Three—Section 523(a)(6) cause of action—summary judgment should enter due to the breach of contract verdict, the common law vexatious litigation verdict, and the statutory vexatious litigation verdict.

The defendant opposes these arguments and asserts that the entry of summary judgment is inappropriate on any of the above grounds. The court will first take up the plaintiffs' arguments as to Count One, the Section 523(a)(2) cause of action, followed by the plaintiffs' arguments as to Count Three, the Section 523(a)(6) cause of action.

## 1. Collateral Estoppel Effect of Breach of Contract and Fraud Verdicts on Count One—Section 523(a)(2) cause of action

In Count One of the Adversary Complaint, the plaintiffs argue, *inter alia*, that their "[d]ebt, in part, is nondischargeable pursuant to § 523(a)(2)(A)." Specifically, the plaintiffs argue that the breach of contract verdict in the Superior Court Action and the resulting damages award is nondischargeable because the debt was obtained by "false pretenses, false representation, or actual fraud." As such, the plaintiffs conclude, the entire contract damages award in the amount of $23,160.00 ". . . may properly [be] assess[ed as nondischargeable by] . . . this [c]ourt."

The defendant responds by claiming that the plaintiffs have not established, as a matter of law, a sufficient factual record to support the claim that the debts are nondischargeable pursuant to § 523(a)(2)(A). The defendant asserts that the breach of contract count establishes none of the facts required to find a nondischargeable debt pursuant to § 523(a)(2)(A).

The defendant's supplemental brief further asserts that summary judgment should not enter with regard to the breach of contract verdict because the following facts remain to be

determined by this Court: (1) whether the defendant obtained money or property from the plaintiff incident to the Settlement Agreement; (2) the amount or value of such money or property obtained by the defendant incident to the Settlement Agreement; and (3) whether the defendant made a material misrepresentation related to the Settlement Agreement. The defendant specifically argues that a claim under § 523(a)(2) can only succeed to the extent that money or property was given in reliance upon his representation and that the Settlement Agreement does not contemplate the payment of money or transfer of property to the defendant by the plaintiffs. The defendant also claims the plaintiffs have not established that the jury found that the defendant made misrepresentations *regarding* the Settlement Agreement and therefore an issue of fact still remains for trial.

In reply, the plaintiffs assert that money promised in a settlement agreement accompanied by a release of liability can amount to a debt for money obtained by fraud within the meaning of § 523(a)(2)(A). Specifically, the plaintiffs argue that the Settlement Agreement contemplated a debt owed by the defendant to the plaintiffs and the parties intended to settle their claims by the defendant paying the plaintiffs $16,000.00 plus the legal fees they incurred defending against the defendant's false claims. The plaintiffs further assert that Count Four in the Superior Court Complaint states a cause of action for fraud and all the allegations in the previous counts are contained in Count Four.

In seeking to prove nondischargeability under any subsection of 11 U.S.C. § 523, the plaintiffs must do so by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287-88 (1991). As other bankruptcy courts in this district have noted, in order to establish the nondischargeability of a debt under § 523(a)(2)(A), a plaintiff must prove, by a preponderance of the evidence, that:

(1) the debtor made the representation;
(2) at the time he knew it was false;
(3) he made it with the intention and purpose of deceiving the creditor;
(4) the creditor relied on such representation; and
(5) the creditor sustained the alleged loss as the proximate cause of the representation.

*Rzasa v. Bugnacki (In re Bugnacki)*, 439 B.R. 12, 25 (Bankr. D. Conn. 2010). Those same courts

have further noted that "[t]he elements of dischargeability under Section 523(a)(2)(A) are

essentially the same as the elements of fraud[2] under Connecticut law." *Id.*

### a. Identity of Issues Between Breach of Contract and Fraud Verdicts and Count One—Section 523(a)(2)(A) cause of action

As summarized above, in order for Connecticut's collateral estoppel doctrine to apply in

this matter, the court must first determine that the issues actually and necessarily litigated in the

Connecticut Superior Court are identical to those in the instant case. *See, e.g., Corcoran v. Dep't*

*of Soc. Serv's*, 271 Conn. 679, 689, 859 A.2d 533 (2004). For purposes of establishing identity

of issues under Connecticut's collateral estoppel doctrine, "[t]he court must determine what facts

were necessarily determined in the first trial, and must then assess whether the [party] is

attempting to relitigate those facts in the second proceeding." *New England Estates, LLC v.*

*Town of Branford*, 294 Conn. 817, 839, 988 A.2d 229 (2010), quoting *Aetna Cas. & Sur. Co. v.*

*Jones*, 220 Conn. 285, 297, 596 A.2d 414 (1991) (alteration in original); *see Barry v. Bd. of*

*Educ. of the City of New Britain*, 132 Conn. App. 668, 676, 33 A.3d 291 (2011) (in a subsequent

state court action alleging breach of contract and breach of a settlement agreement, affirming

application of collateral estoppel effect to a prior federal judgment in a suit alleging violation of

---

[2] The required elements of fraud under Connecticut law are:

(1) that a false representation was made as a statement of fact;
(2) that it was untrue and known to be untrue by the party making it;
(3) that it was made to induce the other party to act on it; and
(4) that the latter did so act on it to his injury.

*Rzasa v. Bugnacki (In re Bugnacki)*, 439 B.R. 12, 25 (Bankr. D. Conn. 2010)

the federal Age Discrimination in Employment Act ("ADA") and specifically finding that the issue underpinning the federal ADA judgment "is the same issue that the plaintiff now attempts to relitigate in state court, even though it is [now] cast as common-law contract claims"); *see also Terracino v. Buzzi*, 121 Conn. App. 846, 1 A.3d 115 ( 2010). "One who invokes the application of collateral estoppel bears the burden of proving all the requisites for its application." *Crestwood James, LLC v. Persechino (In re Persechino)*, 423 B.R. 1, 4 (Bankr. D. Conn. 2010), quoting *In re Busch*, 311 B.R. 657, 666 (Bankr. N.D.N.Y. 2004) (internal quotations omitted). "This burden is met when a party introduces a record sufficient to reveal the controlling facts and pinpoints the exact issues litigated in the prior action." *Id.*

In this case, the court concludes that there is an identity of issues between Count One of the Adversary Complaint and the breach of contract and fraud verdicts in the Superior Court Action. This conclusion is based on the fact that the breach of contract and fraud verdicts in the Superior Court Action are inextricably linked. Although the fraud claim was alleged in Count Four of the Superior Court Complaint, that count expressly incorporated all of the allegations contained in the prior counts, including the breach of contract claim in Count One. Further, each of the counts in the Superior Court Complaint centered on the Settlement Agreement between the parties. Thus, even interpreting ambiguities in favor of the nonmoving party, the court concludes that the fraudulent misrepresentation claims in Count Four of the Superior Court Complaint, which the jury found to be present, centered on the Settlement Agreement and by extension on the breach of the Settlement Agreement.

The jury was explicitly charged on the essential elements of Connecticut common law fraud in the Superior Court Action and these elements are essentially the same as the elements of a nondischargeability claim under 11 U.S.C. § 523(a)(2)(A). As such, as to the breach of

contract and fraud verdicts in the Superior Court Action and Count One in the Adversary Complaint, the court concludes that the issues are sufficiently identical for the collateral estoppel analysis to proceed.

### b. Whether the Essential Elements of § 523(a)(2)(A) Were Actually and Necessarily Litigated

As noted above, the elements of nondischargeability under § 523(a)(2)(A) are essentially the same as the elements of fraud under Connecticut law. In the instant matter, the Jury Interrogatories, read in conjunction with the Superior Court Verdict – even interpreted in a light most favorable to the non-moving party – clearly find each of the essential elements of a claim of fraud under Connecticut law by at least a preponderance of the evidence. For example, the Jury Interrogatories state:

> [w]e find the plaintiff has proved:
>
> (a) false representation made as a statement of fact [("yes" circled)]
>
> (b) statement was untrue and known to be untrue or made with reckless disregard of the truth [("yes" circled)]
>
> (c) statement made to induce plaintiff to act on it [("yes" circled)]
>
> (d) plaintiff acted on the statement to his injury [("yes" circled)]
>
> (unless you circle all four yesses, you must find for the defendant)

ECF Adv. 52, Exhibit E to plaintiffs' Motion, Jury Interrogatories at 3.

Also, as discussed above, the trial judge in the Superior Court Action unambiguously charged the jury on the required elements for fraud under Connecticut law which further demonstrates that the elements of § 523(a)(2)(A) were actually and necessarily litigated. *See* ECF Adv. 55, Exhibit L to plaintiffs' Motion, Jury Charge at 8-9; *see also, id.* at 9 ("... [a]nd, again . . . unless you find yes to all of those questions . . . you must find for the defendant").

Further, the Jury Interrogatories expressly demonstrate that as to the fraud count, the jury affirmatively found reliance by the plaintiffs on the defendant's misstatements. Thus, even interpreting ambiguities in a light most favorable to the non-moving party, the only reasonable conclusion is that the instances of fraudulent misrepresentation alleged in the Superior Court Action – and affirmatively found by the jury in its verdict along with reasonable reliance by the plaintiffs on those misrepresentations – concern fraudulent misrepresentations in connection with the Settlement Agreement.    In light of all of these findings, the court's conclusion that issues of fraud were actually and necessarily litigated is the only reasonable interpretation of the Superior Court Verdict and Jury Interrogatories.

Therefore, the plaintiffs have demonstrated that the essential elements of fraud under Connecticut law were found in the Superior Court Action by at least a preponderance of the evidence. Thus, the plaintiffs have demonstrated, by a preponderance of the evidence, the essential elements of nondischargeability under 11 U.S.C. § 523(a)(2)(A).    Application of collateral estoppel is therefore appropriate as a matter of law.

The defendant has failed to demonstrate a genuine and material issue of fact and has failed to demonstrate that the plaintiffs are not entitled to relief as a matter of law.  Therefore, with regard to the breach of contract verdict and award of damages in the amount of $23,160.00, and with regard to the fraud verdict and award of damages in the amount of $1.00, both debts are hereby deemed nondischargeable under § 523(a)(2)(A), as alleged in Count One of the Adversary Complaint, and summary judgment is **GRANTED** in favor of the plaintiffs on that issue.[3]  In his cross-motion, the defendant moves, *inter alia*, for summary judgment under §

---

[3] In Count One of the Adversary Complaint, the plaintiffs also assert a claim for nondischargeability under § 523(a)(2)(B). However, in light of the court's conclusion that the breach of contract verdict and damages and fraud verdict and damages are nondischargeable under § 523(a)(2)(A), there is no need to reach the merits of the plaintiffs' § 523(a)(2)(B) claim.

523(a)(2)(A) as to the fraud verdict and damages award in the Superior Court Action.  In light of

the court's ruling above, the defendant's cross-motion is hereby **DENIED** as moot.

### 2. Collateral Estoppel Effect of All or Some of the Superior Court Verdict on Count Three—Section 523(a)(6) cause of action

In general, a discharge is unavailable for a debt resulting from a "willful and malicious

injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6);

*see also Parris v. Delaney (In re Delaney)*, 504 B.R. 738, 748 (Bankr. D. Conn. 2014).  The

creditor bears the burden of showing which part of a judgment is based upon willful and

malicious injury. 4 Collier on Bankruptcy ¶ 523.12[5], p. 523-97 (Alan N. Resnick & Henry J.

Sommer eds.,16th ed. rev. 2014), citing *United States Credit Bureau, Inc. v. Digoras*, 169 Cal.

App. 2d 673 (1959).  As is true in any dischargeability action, a creditor seeking to establish

nondischargeability under this section must do so by a preponderance of the evidence. *Delaney*,

504 B.R. at 748; *Orr v. Marcella (In re Marcella)*, 463 B.R. 212, 219 (Bankr. D. Conn. 2011).

The plaintiffs argue that the debt, in whole or in part, is nondischargeable because it

resulted from a willful and malicious injury by the defendant and summary judgment should

enter in their favor.  The plaintiffs advance several arguments in support of their claims and the

defendant contests those arguments.  The court will address each of the plaintiffs' arguments and

the defendant's responses to those arguments in turn.

### a. Breach of Contract Verdict and Count Three—Section 523(a)(6) cause of action

In light of the grant of summary judgment with regard to the nondischargeability of the

breach of contract verdict under § 523(a)(2)(A), the court need not address the parties'

arguments regarding the breach of contract verdict under other subsections of 523(a) and thus

declines to do so. However, the court notes a general principle with regard to § 523(a)(6) and its relationship to the other subsections of § 523(a), as expressed in Collier on Bankruptcy:

> [s]ection 523(a)(6) generally relates to torts and not to contracts . . . [and, further, c]onduct which may give rise to a nondischargeable debt under section 523(a)(6) may also be nondischargeable under other subsections of section 523(a) . . . [accordingly, because f]our other subsections of section 523(a) make different sorts of debts procured by fraud nondischargeable . . . in considering claims of nondischargeability under section 523(a)(6) arising from conduct which may give rise to nondischargeability of a debt under other subsections of section 523(a), courts must be careful to preserve the elements of nondischargeability and limitations on nondischargeability found in other, more specific . . . subsections of section 523(a) to prevent section 523(a)(6) from rendering superfluous those other subsections.

4 Collier on Bankruptcy ¶ 523.12[1], p. 523-91 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2014).

Further analysis being rendered unnecessary by virtue of the court's finding of nondischargeability under § 523(a)(2)(A), the plaintiffs' motion for summary judgment is hereby **DENIED IN PART** insofar as it requests that the debt arising out of the breach of contract verdict be declared nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

### a. Statutory Vexatious Litigation Verdict and Count Three--Section 523(a)(6) cause of action

The plaintiffs also argue that the triple damages awarded for vexatious litigation should be deemed nondischargeable under § 523(a)(6). The plaintiffs assert that summary judgment is appropriate because the jury found for the plaintiffs on each element of the torts of common law vexatious litigation and statutory vexatious litigation and also found that the prior action was brought with malice.

The defendant responds by asserting that summary judgment is not appropriate under § 523(a)(6) because the issue of willful injury remains to be decided by this court. Specifically,

the defendant argues that the plaintiffs must show that the defendant acted intentionally to cause the alleged injury.

### i. Identity of Issues

As was the case with regard to the application of collateral estoppel to the breach of contract verdict, application of collateral estoppel with regard to the statutory vexatious litigation verdict will similarly require an identity of issues between the Superior Court Action and this action under 11 U.S.C. § 523(a)(6). *See supra,* Section V.C.1.a.

In *Crestwood James, LLC v. Persechino (In re Persechino)*, 423 B.R. 1 (Bankr. D. Conn. 2010), a court in this district tackled an "identity of issues" determination for collateral estoppel purposes regarding a prior state court judgment in the context of a § 523(a)(6) dischargeability action. In *Persechino*, when confronted with making such an "identity of issues" determination, the court first referred to the underlying complaint in the prior state court action. *Id.* at 4. The court next engaged in a careful comparison between the allegations made and legal standards applied by the state court in the prior case and the allegations made and legal standards applicable to the issues before the court in the current matter. 423 B.R. at 4-5.

In the instant case, the court has reviewed the Superior Court Complaint, the Superior Court Judgment and the Jury Interrogatories. It is clear that there are factual and legal distinctions that differentiate this case from *Persechino*. For example, the prior state judgment in *Persechino* involved liability under a strict liability Connecticut state "dog bite" statute, yet the Superior Court Verdict and Judgment in this action encompassed a multiple count complaint. Furthermore, the strict liability distinction as to the prior state court judgment in *Persechino* was important since "neither knowledge, intent, willfulness nor maliciousness factored into the Judgment" on the previously litigated dog bite claim. 423 B.R. at 5. As such, the *Persechino*

court reasoned, an essential element of a determination of dischargeability under § 523(a)(6), namely "willful and malicious injury" was not present in the prior state action and therefore the issues between the suits in *Persechino* were not identical.  In the instant case however, the elements of both "willful" and "malicious" injury were both present and actually and necessarily litigated in the Superior Court Action.  Reference to the jury charge and the Jury Interrogatories makes this clear.  Identity of issues between the Superior Court Action and the instant matter as to §523(a)(6) is thus present and poses no bar to the application of collateral estoppel.

### ii. Whether "Willful Injury" Was Actually and Necessarily Litigated

The United States Supreme Court has clearly stated that "willful" as applied in section 523(a)(6) means "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

With regard to whether the issue of "willful injury" was actually litigated in the Superior Court Action, the court concludes that it was.  The record demonstrates that in connection with the common law claim for vexatious litigation, the trial judge in the Superior Court Action explicitly charged the jury that "[t]o prevail . . . the plaintiff must prove by a fair preponderance of the evidence that Mr. Thompson . . . commenced and prosecuted . . . [the civil] action [underlying the vexatious litigation claim] with . . . an intent to cause harm." (emphasis added). As such, although labeling the particular element "malice" rather than "willfulness", the state trial court nonetheless clearly charged the jury on the essential components of "willfulness" consistent with that term's meaning under 11 U.S.C. § 523(a)(6).  Critically, in the findings of fact as memorialized in the Jury Interrogatories, the jury clearly and explicitly found that the "plaintiff ha[d] proved[,]" such "malice[,]" (otherwise known as "willfulness" within the rubric of §523(a)(6)) by a preponderance of the evidence.

As to whether the "willfulness" issue was necessarily litigated, the court recognizes that as a matter of law, the jury's verdict as to both common law and statutory vexatious litigation could not have been validly rendered without the jury's finding of malice. Accordingly, even while interpreting matters in a light most favorable to the non-moving party, the court concludes that the element of "willful injury" by the defendant was actually and necessarily decided in the Superior Court Action.

### iii. Whether "Malicious Injury" was Actually and Necessarily Litigated

As recently noted in this district, "[t]he 'malice' requisite of § 523(a)(6) is distinct from the 'wil[l]fulness' element and the two elements cannot be 'lumped' together." *Parris v. Delaney (In re Delaney)*, 504 B.R. 738, 749 (Bankr. D. Conn. 2014). Specifically, in order for a "willful" injury to also be considered "malicious," it must "be wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will . . . . Malice may be implied 'by the acts and conduct of the debtor in the context of [the] surrounding circumstances.'" *Id.*, quoting *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (ellipses and alteration in original). Additionally *Delaney* further notes, "[m]alice may also be implied when 'anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another.'" 504 B.R. at 749, quoting *Yash Raj Films (USA), Inc. v. Akhtar (In re Akhtar)*, 368 B.R. 120, 132 (Bankr. E.D.N.Y. 2007) (internal quotations and citations omitted).

With regard to whether the issue of "malicious injury" was actually litigated in the Superior Court Action, the court concludes that it was. As was true with the "willfulness" element discussed above, the state court trial judge explicitly charged the jury that "[t]o prevail . . . the plaintiff must prove by a fair preponderance of the evidence[, *inter alia*,] . . . that Mr.

Thompson commenced and prosecuted [a] civil action against [the plaintiffs . . . and that] Mr. Thompson [had a] lack of probable cause to bring the action." The jury charge further instructed the jury that "a malicious intent . . . is not merely an intent to cause [another person] an annoyance, irritation and trouble, but an intent to do so in bad faith with the knowledge or belief that there is no justification for doing so." Further, the Jury Interrogatories themselves clearly manifest that the jury did actually decide the issue of malicious injury in the affirmative. *See* ECF Adv. 52, Exhibit E to plaintiffs' Motion, Jury Interrogatories at 2 (reflecting that the jury affirmatively found all three elements of common law vexatious litigation, namely (a) Termination of prior action in plaintiff's favor; (b) Lack of probable cause; and (c) Malice).

As to whether the issue of "malicious injury" was necessarily litigated in the Superior Court Action, it is clear that the jury charge instructed the jurors on the necessity of making a determination as to maliciousness in generating a validly rendered judgment. *See* ECF Adv. 55, Exhibit L to plaintiffs' Motion, Jury Charge at 7; *see also* ECF Adv. 52, Exhibit E to plaintiffs' Motion. Lastly, the court notes that as a matter of law, in order to enter a valid judgment on Connecticut common law and statutory vexatious litigation, a predicate finding of "lack of probable cause" is a required element. A predicate finding of lack of probable cause is in substance equivalent to § 523(a)(6)'s requirement of "wrongful [conduct] . . . without just cause or excuse[.]" The court accordingly concludes that, for purposes of § 523(a)(6), the issue of "malicious injury" was actually and necessarily litigated in the Superior Court Action.

In light of the jury's findings with regard to willful and malicious injury, which this court has held were actually and necessarily litigated in the Superior Court Action between the same parties in this action and are therefore entitled to preclusive effect, the court concludes that there are no genuine issues of material fact as to the $45,000.00 judgment debt. Further, the court

concludes that, all the essential elements of a cause of action for nondischargeability under 11 U.S.C. § 523(a)(6) were found by a preponderance of the evidence in the Superior Court Action, and that finding is entitled to preclusive effect as to Count Three of the Adversary Complaint, *see supra*.

Plaintiffs are therefore entitled as a matter of law to a determination that the judgment debt they are owed in connection with Count Three of the Superior Court Complaint is nondischargeable pursuant to 11 U.S.C. § 523(a)(6). The plaintiffs' motion for summary judgment on Count Three of the Adversary Complaint seeking that all such debt be deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(6) is hereby **GRANTED**.

### D. Collateral Estoppel Effect of the Superior Court Verdict on Count Two--Section 523(a)(4) cause of action

The plaintiffs argue that the entire breach of contract verdict and award of $23,160.00 is excepted from discharge under Section 523(a)(4) because the defendant acted as a "fiduciary" to the plaintiffs. Specifically, the plaintiffs argue that the defendant provided mediation services to them and that the defendant had superior knowledge, skill and expertise concerning the matters for which his services were contracted by the plaintiffs. Accordingly, the plaintiffs argue that summary judgment should enter in their favor and the breach of contract verdict and damages should be deemed nondischargeable under § 523(a)(4).

The defendant opposes the plaintiffs' § 523(a)(4) claim and asserts in his cross-motion that summary judgment should instead be entered in his favor on the § 523(a)(4) cause of action. Specifically, the defendant asserts that he was not a fiduciary to the plaintiffs and therefore the plaintiffs cannot prove all the required elements of the §523(a)(4) nondischargeability cause of action as a matter of law.

In reviewing both claims, there is an absence of any evidence in the record demonstrating that that the jury found the defendant owed a fiduciary duty to plaintiffs. Furthermore, no case law has been identified that supports the existence of a fiduciary duty under the circumstances of this case. Regardless of those observations, it unnecessary to address the parties' § 523(a)(4) claims due to the entry of summary judgment under §§ 523(a)(2)(A) and 523(a)(6) as outlined above. Accordingly, the plaintiffs' motion for summary judgment and the defendant's cross-motion are hereby **DENIED** insofar as the motions request entry of judgment pursuant to 11 U.S.C. § 523(a)(4).

### E. Superior Court Action Costs and Fees

The plaintiffs also seek summary judgment with regard to the costs and fees awarded in the Superior Court Action. The defendant has not come forward with an issue of fact on this point and in fact explicitly admits the imposition of the cost award in his Local Rule 56(a)(2) statement. The only consideration then is whether, as a matter of law, the award of costs and fees in the Superior Court Action is nondischargeable in this matter.

Courts in other jurisdictions have held that "as a general rule such additional judgment amounts are also nondischargeable to the extent that they arise out of or are ancillary to the nondischargeable debt." *In re Cardin*, No. 11-52077, 2013 WL 1092118 (Bankr. E.D. Tenn. Jan. 31, 2013). See also, *Assoc. Growers, Inc. v. Horowitz, (In re Horowitz)*, 103 B.R. 786, 791 (Bankr. N.D. Miss. 1989) (noting that an award of fees and costs is only excepted from discharge to the extent that those fees and costs arose from a nondischargeable portion of the judgment).

Although there is no controlling precedent in the Second Circuit on this issue, costs and fee awards have been held nondischargeable in bankruptcy courts in this district. See, *In re Delaney*, 504 B.R. at 753 (holding costs and fees awarded in prior federal default judgment

action nondischargeable, pursuant to 523(a)(6)); *Harris v. George, (In re George)*, 205 B.R. 679, 682 (Bankr. D. Conn. 1997) (analogizing attorneys' fees award to punitive and compensatory damages, citing to *Federal Deposit Insurance Corporation v. Roberti (In re Roberti)*, 201 B.R. 614, 623 (Bankr. D. Conn. 1996), and thus holding Connecticut state court's award of attorney's fees nondischargeable under 523(a)(2)(A)); *see also Roberti (In re Roberti)*. 201 B.R. 614, 623 (Bankr. D. Conn. 1996) ("To discharge an ancillary debt which would not exist but for a nondischargeable debt seems erroneous.") (internal quotation marks and citations omitted).

In the instant case, the court has determined, *supra*, that all counts of the Superior Court Verdict and associated damages awards are nondischargeable under either 11 U.S.C. §§ 523(a)(2)(A) or (a)(6). It therefore follows that the costs and fees imposed in the Superior Court Action are nondischargeable as well. The plaintiffs' $1,698.20 award of costs and fees in the Superior Court Action is therefore nondischargeable as a matter of law and summary judgment is thus **GRANTED** in favor of the plaintiffs on this issue.

### VI. Conclusion

For the reasons enumerated above, the defendant's debt to the plaintiffs in the amount of $70,359.20 is **NONDISCHARGABLE**.

Judgment shall enter in this adversary proceeding in favor of the plaintiffs.

By the Court,

Dated: May 22, 2014

*Julie a. Manning*
Julie A. Manning
United States Bankruptcy Judge